IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LUTZ, | ) | |
| | ) | |
| Plaintiff, | ) | 2:20-CV-00676-CCW |
| | ) | |
| vs. | ) | |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant, | ) | |

## <u>OPINION</u>

On May 7, 2020, Plaintiff Michael Lutz filed this action against Defendant Portfolio Recovery Associates, LLC.  ECF No. 1.  Plaintiff filed a four-count Amended Complaint on July 16, 2020.  ECF No. 22.  Defendant moved to dismiss the Amended Complaint in its entirety, and that Motion is ripe for disposition.  ECF No. 26.  For the following reasons, Defendant's Motion to Dismiss will be granted.

### I.    Factual Background

Plaintiff opened a credit card account with Capital One Bank (the "Account").  Am. Compl., ECF No. 22, at ¶25.  The Account permitted Plaintiff to (1) charge purchases of goods and services from vendors that agreed to accept the Account as payment and (2) obtain cash advances.  *Id*. at ¶¶ 27–28.  The Account's interest rate was an APR of 22.90%.  *Id*. at ¶ 36. Plaintiff used the Account to purchase goods and services from entities engaged in the business of selling goods and services to consumers, and to obtain cash advances.  *Id.* at ¶¶ 29–30.  Plaintiff alleges that "[b]oth the goods and services Plaintiff purchased, and the cash advances Plaintiff obtained [using the Account], were for personal, family, and/or household purposes.  *Id*. at ¶ 31.

In August 2019, Defendant Portfolio Recovery Associates ("PRA") filed a lawsuit against Plaintiff in an Allegheny County Magisterial District Court.  PRA claimed that it purchased the Account from Capital One Bank and sought to collect interest and fees charged on the Account's purchases and cash advances at rates of more than 22.90% per year in the aggregate.  *Id*. at ¶¶ 38–41.  In October 2019, Defendant PRA obtained a default judgment against Lutz.  *Id.* at ¶ 42.  In November 2019, Lutz obtained an attorney and appealed to the Allegheny County Court of Common Pleas.  *Id.* at ¶ 43.  The state court scheduled a hearing to occur in February 2020 and Defendant PRA discontinued the lawsuit the day before the scheduled hearing.  *Id*. at ¶¶ 44–45.

Plaintiff's causes of action against Defendant PRA stem from two theories:  First, that by filing the state court action against Lutz without first satisfying statutory pre-suit notice procedures set forth in 12 Pa. C.S. § 6309, Defendant PRA used misleading and/or unfair means to collect outstanding debt.  *See* Am. Compl, ECF No. 22, at § III.  Second, Plaintiff claims that because Defendant PRA is not licensed under the Pennsylvania Consumer Discount Company Act, 7 P.S. §§ 6201, *et seq.* ("the "CDCA"), and it did not obtain prior written approval of the Department of Banking, Defendant PRA was not legally authorized to collect interest or fees on the Account in excess of 6%, but that it attempted to charge interest and fees at a rate of at least 22.90%.  *See* Am. Compl., ECF No. 22, at § IV.  Plaintiff alleges that:

> By seeking to collect and receive interest and fees charged in excess of six percent simple interest per year on the Account's cash advances, PRA falsely represented its ability to collect the full amount of the Account.  Additionally, by seeking to collect and receive such interest and fees, PRA sought to collect and receive interest and fees it had no legal authority to collect or receive.

*Id.* at ¶¶ 72–73.

Plaintiff contends that by failing to give the statutory pre-suit notice, and by filing a lawsuit to collect funds it cannot legally collect without CDCA certification or prior approval, Defendant

PRA violated: (1) the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("the FDCPA"); (2) Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. §§ 2270, *et seq.* (the "FCEUA"); (3) Chapter 63 of Pennsylvania's Consumer Credit Code, 12 P.S. §§ 6301, *et seq.* (the "CCC"); and (4) Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* (the "UTPCPL"). *See generally*, Am. Compl., ECF No. 22.

Defendant PRA moved to dismiss Plaintiff's Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). *See generally*, Br. in Supp. of Mot. to Dismiss, ECF No. 27. Defendant PRA argues that the pre-suit notice requirements of 12 Pa. C.S. § 6309 did not attach to the underlying state court action; therefore, Defendant claims, it was not required to comply with those requirements. *Id*. at § I. Defendant PRA further denies that the CDCA applies to it and denies that it charged or collected interest or other charges on Plaintiff's Account. *Id*. at § II. According to Defendant PRA, because neither the CCC nor the CDCA applies to Defendant or the Account, Defendant's conduct was not wrongful, and Plaintiff's claims must be dismissed.

## II.     Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id*. Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

## III. Discussion

### A. Plaintiff's Claims Based on Alleged Violations of Chapter 63 of the Consumer Credit Code Fail

Count III in its entirety, and Counts I, II, and IV to the extent they are based on alleged violations of the CCC, must be dismissed. Chapter 63 of the CCC, 12 Pa. C.S. § 6301, *et seq*., governs installment sales of goods and services. 12 Pa. C.S.A. § 6301. It applies to both "open-ended agreements" and "closed-ended agreements" as defined by 12 Pa. C.S.A. § 6302. An "open-ended credit agreement" is:

> A contract: (1) in which a buyer promises to pay in installments to a seller or financing agency the outstanding balance incurred in a sale, whether or not the seller retains a security interest in the good sold; and (2) that provides for a finance charge expressed as a percent of the periodic balances to accrue thereafter, if the charge is not capitalized or stated as a dollar amount in the contract.

12 Pa. C.S. § 6302. The CCC defines "financing agency" as:

> A person, including a financial institution, engaged in this Commonwealth in whole or in part in the business of purchasing

4

> closed-end credit agreements or open-end credit agreements from at least one seller.

*Id*.  The statute defines "sale" as: "[t]he sale of goods or furnishing of services by a seller to a buyer for a time sale price payable in installments."  *Id.*  "Seller" means "[a] person engaged in the business of selling goods or furnishing services to a buyer."  *Id.*

When a buyer in a transaction governed by the CCC defaults under the obligations created by the transaction, the holder of the debt created by the transaction has certain statutory enforcement rights.  *See* 12 Pa. C.S. § 6309.  To avail itself of those enforcement rights, the holder must provide notice to the buyer pursuant to 12 Pa. C.S. § 6309(c).

Here, Plaintiff claims that the CCC governs the Account, which he contends is an "open-ended credit agreement," and that Defendant PRA violated the CCC by filing the state court lawsuit without first following the notice procedures set forth by 12 Pa. C.S. § 6309(c).  *See* Am. Compl., ECF No. 22 at ¶¶ 15–19, 46–59, 116–121.  Plaintiff relies on *Acker v. Provident Nat'l Bank*, 512 F.2d 729, 735–39 (3d Cir. 1975).  In *Acker*, the Third Circuit held that the Goods and Services Installment Sales Act ("GSISA"), the precursor to the CCC, could apply to bank-issued credit cards that were used to buy goods and services from third-party retailers.  512 F.2d at 731.  The Third Circuit held that banks are "financing agencies" when they "acquire indebtedness" that customers incur by purchasing goods and services.  *Id*. at 736–37.

By contrast, Defendant PRA contends that the CCC does not apply to the Account because the Account does not qualify as an "open-ended credit agreement" for several reasons.  Specifically, the Account is a credit card and not the product of a transaction for installment sales, Capital One is not a "seller" or "financing agency," and Plaintiff is not a "buyer" under the CCC.  Reply Br. in Supp. of Mot. to Dismiss, ECF No. 27, at 1–4.  Defendant relies heavily on *Hutchinson v. Cavalry SPV I LLC*, 2:19-cv-01001-RJC, 2020 U.S. Dist. LEXIS 182146 (W.D. Pa.

Oct. 1, 2020). There, the court distinguished *Acker* from the facts before the court and held that the CCC does not apply where the plaintiff "used a general purpose credit card to purchase goods and services from various retailers, sellers, and business" and where plaintiff's credit card purchases were not installment sales under Chapter 63. *Hutchinson*, 2020 U.S. Dist. LEXIS 182146, at *13.

The factual allegations in this case are nearly identical to those in *Hutchinson* with respect to the CCC. In both cases, Capital One Bank issued a credit card to the plaintiff, who used it to make credit purchases and cash advances to pay for goods and services for personal, family, and/or household purposes. Am. Compl., ECF No. 22, at ¶¶ 25–31; *Hutchinson*, 2020 U.S. Dist. LEXIS 182146, at *9. Like *Hutchinson*, here there are no allegations that Capital One issued the credit card as part of a contract for the sale of goods or services; similarly, there are no allegations that the retailers Plaintiff patronized using the Account entered into a contract with Plaintiff for the sale of goods or services on a "time sale price payable in installments" or made agreements through which Plaintiff "promise[d] to pay in installments." *See generally*, Am. Compl., ECF No. 22; *Hutchinson*, 2020 U.S. Dist. LEXIS 182146, at *9.

This Court finds *Hutchinson* to be persuasive. Given that the Account is a general purpose credit card and Plaintiff never alleged that he used it to purchase goods or services on an installment basis, the Account is not an "open-ended credit agreement" as the Amended Complaint alleges, and Chapter 63 does not apply. *See generally*, *Hutchinson*, 2020 U.S. Dist. LEXIS 182146. Because Chapter 63 does not apply to the Account, Defendant PRA was not required to notify Plaintiff pursuant to § 6302 before enforcing any rights to the Account. Therefore, Count III of Plaintiff's Amended Complaint is dismissed with prejudice. Furthermore, to the extent Count I (Fair Debt Collection Practices Act), Count II (Fair Credit Extension Uniformity Act), and

Count IV (Unfair Trade Practices and Consumer Protection Law) are premised on Plaintiff's allegations that Defendant PRA violated the CCC, those claims are dismissed with prejudice.

**B. Plaintiff's Claims Based on Alleged Violations of the Commercial Discount Company Act Fail.**

Plaintiff's Amended Complaint alleges that Defendant PRA violated the CDCA by attempting to collect Plaintiff's account debt and interest in excess of the statutory maximum rate given that Defendant is not licensed under the CDCA.  ECF No. 22, at ¶¶ 20–45, 60–73, 105–08. The Amended Complaint does not contain a cause of action directly for violating the CDCA. Rather, Plaintiff alleges that Defendant PRA's CDCA violations are actionable under the FDCPA, the FCEUA, and the UTPCPL.  *See generally*, Am. Compl., ECF No. 22, at Counts I, II, and IV. Defendants argue that those claims fail because:

> (1) PRA is not engaged in the business of negotiating or making loans or advances of money on credit, and (2) PRA did not charge or collect interest or other charges on Plaintiff's Account.  Thus, the CDCA does not apply and Plaintiffs' claims should be dismissed with prejudice.

Br. in Supp. of Mot. to Dismiss, ECF No. 30, at 17.

Under the CDCA, an entity that "is in the business of negotiating or making loans or advances of money on credit in the amount of twenty-five thousand dollars or less" cannot charge or collect "interest, discount[s], bonus[es], fees, fines, commissions, charges, or other considerations which aggregate in excess of" 6%  annually unless that entity is licensed under the CDCA.  7 Pa. C.S. § 6203.A;  *see also*, 41 Pa. Stat. § 201(a);  *Cash Am. Net of Nev., LLC v. Dept' of Banking*, 8 A.3d 282, 285 (Pa. 2010).  Entities that are licensed under the CDCA can make loans of up to $25,000 with interest up to approximately 24% annually.  *Cash Am. Net of Nev., LLC*, 8 A.3d at 285.  This statutory scheme functions as a 6% cap on unlicensed entities that negotiate or

make personal consumer loans in Pennsylvania. *Mellish v. CACH, LLC*, Civil Action No. 19-1217, 2020 U.S. Dist. LEXIS 52383, at *6 (W.D. Pa. Mar. 26, 2020) (Horan, J.).

Defendant PRA claims that the CDCA does not apply because Defendant is not in the business of negotiating or making loans. Br. in Supp. of Mot. to Dismiss, ECF No. 30, at 17. However, Plaintiff's Amended Complaint alleges that "PRA's *sole* business is purchasing defaulted consumer debt with the purpose of collecting debt for profit." ECF No. 22, at ¶ 9 (emphasis added). Black's Law Dictionary defines "negotiate" as follows:

> **negotiate** *vb.* (16c) **1.** To communicate with another party for the purpose of reaching an understanding <they negotiated with their counterparts for weeks on end>. **2.** To bring about by discussion or bargaining <she negotiated a software license agreement>. **3.** At common law, to transfer (an instrument) by delivery or indorsement, whereby the transferee takes the instrument for value, in good faith, and without notice of conflicting title claims or defenses <Jones negotiated the check at the neighborhood bank>. **4.** Under the UCC, to transfer possession of an instrument, usu. by delivery or indorsement and delivery, whereby the transferee becomes its holder. • Transfer of possession may be involuntary (as through theft), and the transferee does not have to meet any additional due-course requirements. UCC § 3-201.

*Negotiate*, Black's Law Dictionary (11th ed. 2019). Accordingly, purchasing a debt as Defendant PRA has done, falls within the definition of "negotiate."

However, Defendant also argues that the CDCA does not apply here because it has a license that is regulated by the Department of Banking and § 6217 exempts all entities that have a license issued by the Secretary of Banking from the scope of the CDCA.

Because a legislature is presumed to express its intent through the ordinary meaning of its language, courts must always begin a statutory analysis by examining the plain language of a statute. *See Murphy v. Millennium Radio Grp., LLC*, 650 F.3d 295, 302 (3d Cir. 2011). "When the statute's language is plain, the sole function of the courts—at least where the disposition

required by the test is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (quotation marks and citations omitted);  *see also Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009). "Generally, where the text of a statute is unambiguous, the statute should be enforced as written and '[o]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language.'"  *In re Phila. Newspapers, LLC*, 599 F.3d 298, 317 (3d Cir. 2010) (quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985) (internal quotation omitted)).

Section 6217 defines the scope of the CDCA and specifically states:

> This act shall not apply to any person, persons, partnership, association or corporation operating under the laws relating to banking institutions, building and loan associations, credit unions or licensed under the Small Loans Act, approved by June seventeen, one thousand nine hundred fifteen, and supplements or amendments, <u>or</u> licensed by the Secretary of Banking of the Commonwealth of Pennsylvania under the provisions of <u>any other statute</u>.

7 P.S. § 6217 (emphasis added).  The plain language of § 6217 unambiguously exempts entities that are licensed by any statue by the Secretary of Banking from the scope of the CDCA.  *Id.*

Plaintiff's Amended Complaint alleges that Defendant PRA is licensed to collect 18% to 20% simple interest on motor vehicle loans under Chapter 62 of the CCC.  Am. Compl., ECF No. 22, at ¶¶ 66–67 (citing 12 P.S. § 6243).  The Secretary of Banking of the Commonwealth of Pennsylvania is the licensing entity for licenses under 12 P.S. § 6243.  *See* 12 P.S. §§ 6211 (providing that licenses that authorize conduct under Chapter 12 are issued by the department); §6102 (defining "department" for the purposes of Part V, which includes § 6211, as "[t]he Department of Banking and Securities of the Commonwealth").  Therefore, the plain language of § 6217, even read in the light most favorable to the Plaintiff, exempts Defendant PRA from liability

under the CDCA.  Furthermore, this result is not absurd because it could be fairly read that the legislature exempted entities licensed by the Department of Banking from the CDCA, because the Department of Banking has oversight and other authority over its licensees, even those which are licensed under other statutes.

Viewed in the light most favorable to Plaintiff, the Amended Complaint does not plausibly allege that Defendant PRA is subject to the CDCA.  Accordingly, the remainder of Counts I, II, and IV, which rely on alleged CDCA liability, must be dismissed.

### IV.    Leave to Amend

In non-civil rights cases such as this one, district courts are not obligated to grant leave to amend the pleadings before dismissing a complaint.  *Hutchinson*, 2020 U.S. Dist. LEXIS 182146, at *14.  Nevertheless, courts generally grant leave to amend unless the amendment would be inequitable or futile.  *See e.g., Batchell v. Gen. Mills, Inc.*, 422 F.Supp.3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty*, 515 F.3d 224, 245 (3d Cir. 2008)).  Given that neither the CCC nor the CDCA applies to Defendant PRA, and violations of those statutes predicate all of Plaintiff's claims, we find that further amendment would be futile.

### V.    Conclusion

For the foregoing reasons, the Amended Complaint is dismissed with prejudice.

DATED this 19th day of January, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record